141 So. 868

**POWELL v. SUPERIOR PURE ICE CO., Inc.**

**No. 31643.**

April 25, 1932.

Brian & Brian, of New Orleans, for appellant.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellee.

ROGERS, J.

Robert O. Powell, the holder of a mortgage note of $60,000 executed by the Superior Pure Ice Company, Inc., proceeded via executiva for the enforcement of his mortgage rights. The sheriff in execution of the writ adjudicated the mortgaged property to Powell. Subsequently J. A. Petty & Sons, Inc., filed a petition of intervention and third opposition, claiming the right to be paid $6,889.52 from the proceeds of the sale by preference and priority. Powell and the sheriff excepted to this intervention and third opposition, on the ground that it failed to disclose any

right or cause of action. The exceptions were maintained and the intervention and third opposition dismissed. From this judgment, J. A. Petty & Sons, Inc., intervener and third opponent, appealed.

Intervener alleges:

That on March 11, 1929, it entered into a building contract with the defendant in the sum of $43,779. That it furnished a statutory bond, and that the contract and bond were timely recorded. That, according to the terms of the contract, extra work was performed to the amount of $2,498.99. That the entire work was completed, and that intervener received all that was due under the contract, except $6,889.52.

That, when the second payment of $10,948.76 became due, defendant was able to pay only $5,000 on account, and, in order to facilitate defendant to pay an existing mortgage and indebtedness of $30,000 and a portion of the balance on the contract price, intervener agreed to subrogate its lien and privilege to whoever should make the loan.

That, accordingly, a loan of $60,000 was made to defendant by Anthony J. Sciambra and Paul Masino, Jr., which loan was secured by the mortgage herein foreclosed, and that, in the act of mortgage, intervener, in consideration of receiving $20,190.53 on account of its building contract out of the proceeds of the loan, waived in favor of the mortgagees or any subsequent holder of the mortgage note any privilege or lien it had by virtue of its contract, the lien and privilege, however, to remain in full force and effect as concerned any and all other persons.

That, in the act of mortgage, Gustave H. Rathe, the president of the defendant corporation, acting in his individual capacity, pledged 1,000 shares of the common capital stock of the corporation as additional security for the payment of the mortgage note; that subsequent to the maturity of the mortgage note the mortgagees sold it to one Pownall, who held it for more than a month and then sold it to Robert C. Powell, the plaintiff herein, and that the certificate for 1,000 shares of the capital stock of the defendant was transferred with the pledge along with the note by the mortgagees to Pownall and by Pownall to Powell.

That during the time Pownall owned the mortgage note Gustave H. Rathe pledged as additional security for the note 7,000 shares of the common capital stock of the defendant corporation, so that, when Powell acquired the mortgage note, it was additionally secured by the pledge of 8,000 shares of the common capital stock of the defendant, which had a market value at that time of $10 a share.

That on April 13, 1931, Powell, the plaintiff, the Superior Pure Ice Company, Inc., the defendant, and Gustave H. Rathe entered into an agreement, whereby it was agreed that Powell would not foreclose the mortgage until after June 10, 1931, and that the pledges of the stock would not be enforced prior to the foreclosure, which agreement was entered into without the knowledge of intervener, and that intervener only learned of the agreement subsequent to the adjudication by the sheriff under the writ issued in this suit.

That the real estate in question constituted practically all the assets of the defendant.

That at all times subsequent to the original maturity of the mortgage note the pledged stock had a value of more than $1 per share, which could have been realized by plaintiff and applied to the reduction of the interest and principal of the mortgage note, and thus placed the intervener's lien against the real estate in a more advantageous position; but, because of the agreement not to enforce the pledge until after the foreclosure of the mortgage, when the property was adjudicated for very little, if any, more than the amount of the mortgage note, with attorney's fees and costs, the value of the stock was by the voluntary action of the parties and to intervener's prejudice reduced to nothing at all.

Intervener prayed for judgment reinstating its lien and privilege as a first lien and privilege upon the property sold in this proceeding, and that intervener be decreed to be entitled to payment from the proceeds of the sale the amount of its claim by preference and priority over all other persons.

Intervener's demand, reduced to its simplest form, involves three propositions, to wit:

First. That intervener did not waive its lien and privilege under the building contract, but only subrogated the mortgagees and the future holders of the mortgage note to its claim and lien.

Second. That the pledges by Gustave H. Rathe of his common capital stock of the defendant corporation as additional security operated as a security for the balance of intervener's claim.

Third. That the agreement among plaintiff, defendant and Rathe, wherein it was agreed

that the mortgage should not be foreclosed prior to June 10, 1931, and that the pledges of the stock should not be enforced until after the foreclosure of the mortgage, destroyed the value of the stock and thereby restored the priority of intervener's lien under the building contract.

We will dispose of these propositions in the order of their statement.

First. Intervener argues that Sciambra and Masino, who lent the defendant corporation $60,000 on its mortgage note, were third persons from whom intervener received a partial payment of its claim, and that in the act of mortgage the mortgagees were subrogated by it to its lien and privilege only to the extent of the payment so received. Intervener refers to articles 2160 and 2162 of the Civil Code as supporting its contention.

But the facts of the case do not bring it within the terms of the codal articles, which refer to subrogation by a creditor receiving his payment from a third person, to the debtor borrowing for the purpose of paying his debts, intending to subrogate the lender in the rights of the creditor, and the effect of the subrogation as against sureties.

The act of mortgage was signed by the plaintiff, the defendant, the intervener, G. H. Rathe, and the mortgagees. The mortgagees lent defendant $60,000 for which defendant gave them its note secured by mortgage on the property described in the act. The instrument recites a payment by defendant, the debtor, to intervener, the creditor, of $20,190.-53 on account of the building contract. The creditor did not receive the payment from the mortgagees but from its debtor. And, in consideration of the payment, the intervener

expressly waived in favor of the mortgagees or any subsequent holder of the mortgage note any privilege it might have by virtue of the contract; "said lien and privilege, however, to remain in full force and effect as concerns any and all other persons."

Under the terms of the written agreement, the mortgagees did not receive, and it was not intended they should receive, the right to collect or enforce any part of intervener's claim or privilege. They lent defendant their money, relying on the waiver and subordination of intervener's lien and privilege, so that the mortgage securing the loan became a first mortgage upon the property. The agreement was one of subordination of intervener's entire lien and not of subrogation to intervener's claim, in whole or in part.

■ Second. Gustave H. Rathe was not indebted to intervener in any amount, nor did he borrow any money from the mortgagees. The loan was made to the defendant on its note secured by mortgage on its property. Rathe individually intervened in the act of mortgage and pledged 1,000 shares of his stock "in order to additionally secure the payment of the note executed herein"; that is, defendant's note given by it to the mortgagees. His subsequent pledge of 7,000 shares of stock to Pownall, the then holder of the mortgage note, was executed for the same purpose and on the same conditions. The pledges of Rathe's stock were not made to secure defendant's indebtedness to intervener, but only in favor of the holder or holders of defendant's mortgage note to additionally secure the indebtedness evidenced by the note.

The case of Burbank v. Buhler, 108 La. 39, 32 So. 201, cited by intervener in support of its contention, is not appropriate to the case presently before us.

■ Third. The subsequent agreement between Pownall, the holder of the mortgage note, and Rathe, whereby the maturity of the mortgage note was extended, was not in derogation of any of intervener's rights. There was no contractual obligation on the part of the holder of the mortgage note forbidding such agreement, and he was under no duty to enforce his rights against Rathe's stock before foreclosing the mortgage securing defendant's note. Intervener was not a party to the agreement, and it did not affect its claim. There was no reason why intervener could not have enforced its lien under the building contract, subject to the superior rights of the holder of the mortgage note. And, beyond this, if plaintiff had enforced his pledges of Rathe's stock, Rathe would have been subrogated pro tanto to plaintiff's rights, entitling him to reimbursement to the extent of the amount brought by the sale of his stock from the proceeds of the sale of the mortgaged property after payment of the balance due on the mortgage note, before anything whatever would have been due intervener.

The case of Kyle v. Bayou Sale P. & D. Co., 134 La. 232, 63 So. 886, relied on by intervener, is inapplicable to the issues presented in the instant case.

For the reasons assigned, the judgment appealed from is affirmed.