432 So.2d 228 (1983)
T.D. BICKHAM CORPORATION
v.
Dr. Ronald HEBERT and Alpha Partnership d/b/a Elk Place Dental Center.
No. 82-C-1541.
Supreme Court of Louisiana.
April 19, 1983.
*229 B. Franklin Martin, III, Elwood R. Cahill, Jr., McGlinchey, Stafford & Mintz, New Orleans, for applicant.
John J. Fenerty, III, New Orleans, for respondent.
LEMMON, Justice.
The primary issue in this case is the validity of a provision in a lease contract which subordinates the lease to an unspecified future mortgage.
Defendant, a dentist, leased Suite 1717 in Elk Place Medical Plaza (EPMP) on September 1, 1976. The recorded lease provided for a ten-year primary term, with two five-year options, and a monthly rental of $3,448. The lease also contained a subordination clause, which provided:
"This lease shall at all times be subject and subordinate to the lien of any mortgage or mortgages now or hereafter placed upon said `EPMP', and to all advances made or hereafter to be made upon the security thereof. Lessee agrees to execute and deliver such further instrument or instruments, subordinating the lease to the lien of any such mortgage or mortgages, at any time same may or shall be desired by any mortgage or proposed mortgage of any Lessor." (Emphasis supplied.)
On December 22, 1977, EPMP's owner mortgaged the property in order to retire its interim debt incurred during the construction and renovation of the premises. Contemporaneously with the mortgage, EPMP's owner assigned all the leases on the property to the mortgagee. When the mortgagee foreclosed on the mortgage after the owner's subsequent default, plaintiff purchased the property at a sheriff's sale on October 27, 1980 for $8,600,000. Among the recorded leases shown on the certificate was the one to defendant. Thereafter, plaintiff notified defendant that his lease had been cancelled by the judicial sale, but that occupancy would be allowed to continue, pending renegotiation of the lease. When the parties failed to agree on new terms, plaintiff instituted this eviction proceeding.
The trial court dismissed the suit on the ground that the recorded contract of lease, of which plaintiff had knowledge, did not contemplate cancellation of the lease in the event of a judicial sale. The court of appeal *230 affirmed, holding that the subordination provision was vague, indefinite, repugnant to the bilateral nature of the contract, and against public policy. 413 So.2d 189. The court also noted that the defendant was never requested to execute any further instruments specifically subordinating the lease when the mortgage was later placed on the property after his lease. We granted certiorari to review those judgments. 420 So.2d 167.
Generally, the lessee of immovable property, in the absence of a violation of the contract, is entitled to peaceable possession of the premises during the continuance of the lease. La.C.C. Art. 2692. Even when the lessor sells the property which is subject to a recorded lease, the lessee retains the right to possession, unless there was a contrary stipulation in the contract. La.C.C. Art. 2733.
The court of appeal held that the subordination clause in this case was ambiguous and should not be interpreted as a "contrary" stipulation so as to deprive the lessee of his normal right to peaceable possession until the expiration of the lease. However, the pertinent provision clearly states that "[t]his lease shall at all times be subject and subordinate to the lien of any mortgage now or hereafter placed upon" the property. While defendant may not have realized the legal consequences of consenting to subordination of his lease to a future mortgage by the lessor, the language can hardly be characterized as unclear. Defendant may have disregarded the provision as meaningless, but he certainly could not have understood the provision to have a different meaning than that the lease was subject to being placed in a lower position or rank by a mortgage which is granted on the property after the lease.
The second sentence of the subordination provision is likewise unambiguous. The subordination is self-operative by the first sentence, and the second sentence requires the lessee to execute a separate document evidencing the subordination of the lessee if the lessor's mortgagee (or proposed mortgagee) desires such an instrument. One cannot reasonably infer from the second sentence that the parties to the lease intended that an additional contract would be necessary before the subordination became effective or that the lessee retained the right to withhold consent to subordinate the lease in the event of a future mortgage.
We therefore hold that the subordination provision contained in the lease constitutes a specific and unambiguous contrary stipulation in which the lessee surrendered his superior position to present and future mortgages.
As to the effect of the subordination provision, La.C.C.P. Art. 2372 expressly provides that property sold at a judicial sale is sold subject to any real charge or lease which is "superior to" the rights of the seizing creditor.[1] Further, La.C.C.P. Art. 2376 provides that a judicial sale results in the cancellation and release of rights which are "inferior to" the right exercised by the seizing creditor.[2] Under these two articles, a judicial sale cancels a right in property sold at a judicial sale which is inferior to the right of the seizing creditor.
Although there are no Louisiana cases dealing with provisions that subordinate a lease to a future unspecified mortgage, prior cases have consistently held that leases, which are recorded subsequent to a mortgage, are cancelled and dissolved by the judicial sale of the property pursuant to a foreclosure on the mortgage. Thompson v. Flathers, 45 La.Ann. 120, 12 So. 245 (La. 1893); Sandel v. Douglas, 27 La.Ann. 628 *231 (1875); Barelli v. Szymanski, 14 La.Ann. 47 (Orl.App.1859). Conversely, in the absence of the contrary stipulation in the contract, defendant's lease (which was recorded prior to the mortgage foreclosed upon) would not have been cancelled by the judicial sale. This case therefore turns upon the validity of the subordination provision.
Louisiana courts have given effect to contractual provisions altering or modifying the priority of the rights or claims otherwise established by law. See Richey v. Venture Oil and Gas Corp., 346 So.2d 875 (La.App. 4th Cir.1977), cert. denied, 350 So.2d 891, which upheld the validity of a contractual provision subordinating the mortgage to a specified (but subsequently recorded) mortgage. See also Powell v. Superior Pure Ice, 174 La. 891, 141 So. 868 (La.1932); Peoples Bank & Trust v. Thibodaux, 170 La. 969, 129 So. 547 (La.1930); Odom v. Cherokee Homes, 165 So.2d 855 (La.App. 4th Cir.1964). We see no reason in law or in public policy why an unambiguous provision in a lease between two parties with equal bargaining power cannot validly subordinate that contract to an unspecified future mortgage which is contracted in good faith.
Furthermore, a provision subordinating a lease to a future unspecified mortgage is a reasonable contractual provision which has a legitimate business purpose. The owner of an office building or shopping center frequently intends to undertake future renovation or additions and foresees that a future mortgage will be required. A subordination provision is generally included in the leases in anticipation of the requirements of institutional lenders. E. Halper, Shopping Center and Store Leases, § 10.03 (1982); A. Arnold, Modern Real Estate and Mortgage Forms, § 79 (1978); M. Lieberman, Effective Drafting of Leases for Real Property, §§ VI-5 and XXIII-15 (1956). Because the value of a commercial building is related directly to the building's rental income, the prospective lender will frequently require that his position be superior to existing leases, so that the lender may be protected in the event of foreclosure.[3] When the owner requires a subordination provision in the leases, he protects the value of his property for purposes of obtaining future mortgages.
Of course, the lessee at the time of confection of the lease does not have to consent to a subordination provision which threatens the security of his business in the event of foreclosure. The inclusion or exclusion of such a provision is a negotiable term, just as is the rate of rental. The lessee may also control the future risks by limiting the subordination to institutional mortgagees, to first mortgages, and to specific amounts or specific purposes. (Of course, the lessee normally faces the risk of foreclosure on the mortgage existing at the time of execution of the lease if the owner defaults on the existing mortgage.) However, once a lessee consents to a subordination provision (perhaps in exchange for a reduced rental rate), he cannot successfully resist the termination of the lease if a subsequent mortgagee forecloses on the property through a judicial sale.
Finally, there is no suggestion in this case that the subordination provision has been utilized in bad faith or with fraudulent intent.[4] The first mortgagee foreclosed *232 on EPMP to collect a debt in excess of $8,000,000. Plaintiff, a third party unrelated to either the prior owner or the mortgagee, purchased the building by bidding the highest price at an open judicial sale. The former owner has been forced to seek relief in the bankruptcy court and will derive no benefit from this litigation.[5]
Accordingly, the judgments of the lower courts are reversed, and the matter is remanded to the district court to enter judgment ordering the eviction.
CALOGERO, J., concurs.
WATSON, J., dissents and assigns reason.
WATSON, Justice, dissenting.
When leased property is encumbered with a prior recorded mortgage and there is a foreclosure, the judicial sale dissolves the lease. See Celeste Sugar Co. v. Dunbar-Dukate Co., 160 La. 694, 107 So. 493 (1926). However, generally, when the lease is recorded first, the lease follows the property into the hands of a buyer.
LSA-C.C. art. 2733 provides:
"If the lessor sells the thing leased, the purchaser can not turn out the tenant before his lease has expired, unless the contrary has been stipulated in the contract."
The subordination clause here does not constitute a specific contrary stipulation within the meaning of the codal article. See Republic Nat. Life Ins. v. Lorraine Realty, 279 N.W.2d 349 (Minn., 1979) where a general nonspecific subordination clause was enforced on equitable grounds because of fifteen years detrimental reliance. However, the result was not cancellation of the lease. In Republic the ground lessors subordinated their interest in the leased premises to future mortgages. "Their [the lessors'] interest in the lease, in particular to rent, is subordinated to, not extinguished by Republic's [the mortgagee's] interest." 279 N.W.2d at 357. (Emphasis added)
Subordinate is defined in Black's Law Dictionary, Fifth Edition, as follows:
"Placed in a lower order, class, or rank; occupying a lower position in a regular descending series; inferior in order, nature, dignity, power, importance, or the like; belonging to an inferior order in classification, and having a lower position in a recognized scale; secondary, minor."
There are no Louisiana cases dealing with this type of clause in a lease and there are no provisions in the Civil Code for subordination of a lease to a future mortgage. Subordination clauses in mortgages have been given effect when the language specified the obligations to which they were subordinate. Richey v. Venture Oil & Gas Corp., 346 So.2d 875 (La.App. 4 Cir.1977) and Powell v. Superior Pure Ice Co., 174 La. 891, 141 So. 868 (1932).
LSA-C.C.P. art. 2372, concerning foreclosure sales, provides:
"The property is sold subject to any real charge or lease with which it is burdened, superior to any mortgage, lien, or privilege of the seizing creditor."
This lease, superior by time of recordation to the mortgage of the seizing creditor, states that it is nonetheless inferior to any future mortgage.
"According to traditional civilian notions, a contract of lease establishes personal rights only. * * * [T]he contract of lease produces all the effects of personal rights and none of the effects of real rights. * * Since a recorded lease may be asserted against third persons, the landowner may not grant a predial servitude or other real or personal right in violation of the terms *233 of the lease without the concurrence of the lessee." 2 La.Civ.Law Treat. (Yiannopoulos) 2d at pp. 414 and 418.[1] See LSA-Const. 1974, Art. 1, § 4[2] and Art. 1, § 2.[3] A fair reading of this subordination provision is in accord with the foregoing statements of Louisiana law. Dr. Hebert, the lessee, had to concur in any future mortgage placed on the leased premises by executing a specific subordination agreement as to that mortgage. It is significant that Dr. Hebert was never asked to execute a specific instrument subordinating his lease to the mortgage placed on the property by The Mutual Life Insurance Company of New York.
In other jurisdictions, subordination clauses which were uncertain and indefinite have not been enforced. See, for example, Lahaina-Maui Corp. v. Tau Tet Hew, 362 F.2d 419 (U.S. 9 Cir.1966)[4] and Roven v. Miller, 168 Cal.App.2d 391, 335 P.2d 1035 (1959). Particularly pertinent here is the case of Am. Fed. Sav. & Loan Ass'n v. Orenstein, 81 Mich.App. 249, 265 N.W.2d 111 (1978). A mortgage there contained a subordination clause which provided:
"This Mortgage and Assignment of Leases and Rentals is subject and subordinate in all respects to the following: ...; and all advances, obligations and indebtedness now or hereafter incurred up to the sum of $4,125,000, exclusive of interest, and...." 265 N.W.2d at 113.
The Michigan court held:
"The ambiguity in the instant subordination clause was so obvious as to put a prudent person on inquiry notice." 265 N.W.2d at 112.
Because of the obvious ambiguity, third persons were not entitled to rely on the publicly recorded subordination clause. The language used in the lease from E.P.M.P. to the defendant, Dr. Hebert, is more vague and ambiguous than that in the Orenstein case.
The subordination clause executed by Dr. Hebert is so vague and ambiguous as to put any prospective purchaser on notice that it might not be enforceable. Dr. Hebert understood that sale of the property would not cancel his lease. Nothing to the contrary is clearly specified in the lease's subordination provision or any "further instrument". Therefore, the agreement cannot be interpreted to authorize Bickham, a remote third party, to cancel the lease. There is no basis, in law or equity, to hold that T.D. Bickham Corporation is entitled to unilaterally cancel Dr. Hebert's lease of Suite 1717 in Elk Place Medical Plaza.
I respectfully dissent.
NOTES
[1] Article 2372 provides:

"The property is sold subject to any real charge or lease with which it is burdened, superior to any mortgage, lien, or privilege of the seizing creditor."
[2] Article 2376 provides:

"The sheriff shall give the purchaser a release from the mortgage, lien, or privilege of the seizing creditor, and from all inferior mortgages, liens, and privileges, and he shall direct the recorder of mortgages to cancel their inscriptions in so far as they affect the property sold."
[3] The existence of an attractive lease by a major tenant will generally induce lenders. However, a small tenant in a strategic location or a series of long-term, low-rate leases may discourage a lender who will be saddled with troublesome problems in the event of foreclosure.
[4] Defendant contends that he made substantial improvements to the leased premises in reliance on the leasing agent's (apparently incorrect) explanation of the subordination provision. The lease contract contained no reference to any obligation on the defendant or the owner as to specific improvements by defendant or to any other provision which might alert a subsequent mortgagee that the subordination provision could be called into question. Moreover, since the lessee undertook any improvements at the risk that an existing mortgagee might foreclose in the event of the owner's default, a subsequent mortgagee who examined the subordination provision would reasonably conclude that the lessee undertook the same risk as to future mortgages.
[5] Defendant's argument that the subordination provision constituted a potestative condition is likewise without merit. A potestative condition makes execution of the contract depend upon an event which one contracting party has the power and choice to bring about or to prevent. La.C.C. Art. 2024. The owner of EPMP could not bring about the cancellation of the lease contract without losing ownership of the building through foreclosure. Thus, the potential cancellation of the lease did not depend on the whim of the owner, but on the mortgagee's exercise of its right to foreclosure.
[1] Professor A.N. Yiannopoulos, W.R. Irby Professor of Law, Tulane University.
[2] LSA-Const. 1974, Art. I, § 4 provides:

"Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
"This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes."
[3] LSA-Const. 1974, Art. 1, § 2 provides:

"No person shall be deprived of life, liberty, or property, except by due process of law."
[4] "`Said lease shall contain the standard provisions normally contained in a lease for similar property situate (sic) in the State of Hawaii together with the provision that the Lessor shall subordinate their fee to permit the Lessee to obtain financing which provision is by way of example, but not by way of limitation.'" 362 F.2d at 420.