DOMENGEAUX, Chief Judge.
This appeal requires us to determine the validity of two acts of subordination executed by the intervenors in this suit under executory process.
FACTS
On November 16, 1984, Scarlett Investments, a Louisiana partnership, purchased the property located at 1025 Broad Street in Lake Charles for the operation of a restaurant and lounge known as “Scarlett *912 O’s”. In financing this transaction, Scar-lett Investments placed these encumbrances on the property: a collateral mortgage in favor of American Bank of Commerce for $450,000.00; a mortgage and vendor’s lien in favor of Cyrus A. King, II, D.C. Flynt, and Phyllis Flynt Foster for $100,000.00 (hereinafter the “King mortgage”); and a mortgage in favor of Foster, Flynt and Quinton Chisolm for $100,000.00 (hereinafter the “Foster mortgage”). By authentic act, also dated November 16, 1984, King, Flynt and Foster subordinated their mortgage and vendor’s lien to the American Bank of Commerce collateral mortgage. Thus, the encumbrances on the property were ranked as follows:
1. The American Bank of Commerce collateral mortgage.
2. The King mortgage and vendor’s lien.
3. The Foster mortgage.
Subsequently, Davidson Profit Sharing Plan, one of the two intervenors herein, became the sole holder of the note secured by the King mortgage, and Foster, also an intervenor, acquired Flynt’s interest in the note secured by the Foster mortgage. Chi-solm is not a party to this suit.
On September 23, 1985, a fire damaged the Broad Street property, rendering it unfit for the operation of Scarlett O’s. Shortly thereafter, when Scarlett Investments became delinquent in its financial obligations, American Bank of Commerce called in its loan.
To avoid the impending foreclosure, Scar-lett Investments arranged refinancing from the plaintiff herein, Calcasieu Marine National Bank of Lake Charles. In a loan commitment issued on May 1, 1986, Calca-sieu Marine agreed to lend Scarlett Investments $423,539.00, the amount needed to pay off American Bank of Commerce, this loan to be secured by a collateral mortgage in the amount of $750,000.00.
In response to Calcasieu Marine’s request for a first mortgage on the property, the intervenors and Chisolm executed the two acts of subordination at issue in this appeal. Both the King mortgage and the Foster mortgage were subordinated to a collateral mortgage in favor of Calcasieu Marine in the amount of $423,539.00. However, the only collateral mortgage executed by Scarlett Investments in favor of Calcasieu Marine was for the sum of $750,-000.00. Furthermore, neither act of subordination identified the Calcasieu Marine mortgage by its filing number or recording reference.
PROCEDURAL HISTORY
Calcasieu Marine filed this suit for exec-utory process against Scarlett Investments and its nine partners, individually, when Scarlett fell behind in its payments on two promissory notes allegedly secured by the $750,000.00 collateral mortgage. Davidson Profit Sharing Plan and Foster intervened, alleging the King mortgage and vendor’s lien and the Foster mortgage primed Calca-sieu Marine’s collateral mortgage. Calca-sieu Marine then reconvened against the intervenors, asking the Court to enforce the subordinations as written, up to $423,-539.00, and in the alternative, alleging the intervenors should be estopped from denying the validity of the subordinations.
In oral reasons for judgment, the trial court enforced the subordinations as written, finding the intervenors clearly intended to subordinate their liens up to the sum of $423,539.00. The court then ranked the parties’ interests as follows:
(1) First, Calcasieu Marine, for the balance due under its collateral mortgage, plus interest and attorney’s fees, up to the sum of $423,539.00
(2) Second, Davidson Profit Sharing Plan, for the sum of $69,851.18, plus interest and attorney’s fees, under its mortgage and vendor’s lien.
(3) Third, Phyllis Flynt Foster, for the sum of $38,764.90, plus interest and attorney’s fees, under her mortgage.
Intervenors appealed. We affirm.
THE ACTS OF SUBORDINATION
In Louisiana, parties are free to alter or modify the priority of rights or claims otherwise established by law. T.D. Bickham Corp. v. Hebert, 432 So.2d 228 (La.1983); *913 Richey v. Venture Oil & Gas Corp., 346 So.2d 875 (La.App. 4th Cir.1977), writ denied, 350 So.2d 891 (La.1977); Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4th Cir.1964), writ denied, 246 La. 868, 167 So.2d 677 (1964).
Ideally, a subordination provision should be as specific as the one in Richey, supra, where the mortgage deemed to be superior was identified by the amount of the collateral mortgage note, the amount of the hand note (which, in that case, was also the amount of the subordination), as well as the mortgage book and page number where recorded. However, a subordination agreement should not fail if it contains a less precise description, or even an ambiguous one, if the intent of the parties can be ascertained. In Bickham, supra, our Supreme Court upheld a subordination clause which stated that a lease would “be subject and subordinate to the lien of any mortgage now or hereinafter placed upon” the property. In Odom, supra, the court looked to the intent of the parties to determine whether an ambiguous subordination clause applied to mortgages subsequently placed on the property.
The acts of subordination at issue here are ambiguous: the failure to include the recording information of the Calcasieu Marine mortgage and the discrepancy in the amount of the mortgage, as revealed by an examination of the public record, results in uncertainty. Nonetheless, the intervenors clearly intended to relinquish their preferential rank to some extent. As to the parties herein, we are free to examine their intent. We express no opinion as to its outcome, had this case involved the rights acquired by independent, third persons relying upon the public record.
The intervenors claim they intended to subordinate their mortgages to a specific collateral mortgage in the amount of $423,-539.00. They contend they would not have executed the subordinations had they known the actual collateral mortgage was for $750,000.00. According to the inter-venors, the total amount of the mortgage was significant to them because they believed Scarlett Investments could not continue operations if it incurred a debt in excess of $423,539.00.
This contention is not supported by the record. The acts of subordination do not contain any prohibition against Scarlett Investments borrowing additional money. At all times, Scarlett was free to incur additional debt, either from Calcasieu Marine or from another lender.
After reviewing the record, we find the trial court correctly concluded all parties intended the subordinations were only for $423,539.00. In May of 1986, when these documents were executed, the primary concern of all parties was to keep Scarlett Investments in operation by paying off the American Bank of Commerce debt. In the loan agreement, Calcasieu Marine committed itself to a loan in the amount of $423,-539.00, but it required a first mortgage on the property. Although the intervenors relinquished a favorable ranking, they substantially improved their position by executing the subordinations. They protected their investment by forestalling the American Bank of Commerce foreclosure, and their ranking with Calcasieu Marine would remain as it had been with American Bank of Commerce. We do not find the total amount of the Calcasieu Marine mortgage significantly influenced their decision to execute the subordinations.
We also reject intervenor’s argument, based upon Civil Code article 3282, that the trial court’s ruling violates the indivisible nature of the mortgage. Although very little jurisprudence interprets article 3282, it is clear the article exists for the protection of the creditor, to insure the mortgage encumbers every part of the immovable in the event of a subsequent transfer. The article is not concerned with the distribution of the proceeds from the sale of the immovable.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against intervenors-appellants, Davidson Profit Sharing Plan and Phyllis Flynt Foster.
AFFIRMED.