ELY EDWARDS           *      NO. 2021-CA-0623
ENTERPRISES, INC.

                       *

**VERSUS**               **COURT OF APPEAL**

                       *

**PONTCHARTRAIN PARK**     **FOURTH CIRCUIT**
**CDC REAL ESTATE**       *
**HOLDINGS, LLC AND NEW**    **STATE OF LOUISIANA**
**ORLEANS REDEVELOPMENT**  * * * * * * *
**AUTHORITY**

**CONSOLIDATED WITH:**      **CONSOLIDATED WITH:**

**NEW ORLEANS**           **NO. 2021-CA-0624**
**REDEVELOPMENT AUTHORITY**

**VERSUS**

**ELY EDWARDS ENTERPRISES,**
**INC.**

APPEAL FROM
CIVIL TRIAL COURT, ORLEANS PARISH
NO. 2018-12443, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Pro
Tempore Judge Madeline Jasmine)

Ryan M. McCabe
DWYER, CAMBRE & SUFFERN, APLC
3000 W. Esplanade Ave, Suite 200
Metairie, LA 70002


        COUNSEL FOR PLAINTIFF/APPELLEE


Carl A. Butler
Tiffany M. Fleming
Kristin M. Barone
BUTLER LAW FIRM, LLC
2400 Veterans Blvd., Suite 485
Kenner, LA 70062

Laura Carter Settlemyer
1409 Oretha Castle Haley Blvd.
New Orleans, LA 70113


COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**

**APRIL 13, 2022**

These consolidated cases stem from a failed neighborhood revitalization project involving numerous properties in the Pontchartrain Park community, located in New Orleans. Ultimately, many of the properties became subject to foreclosure proceedings. Ely Edwards Enterprises, Inc. ("Edwards") and the New Orleans Redevelopment Authority ("NORA") have competing interests in the funds acquired through the sales of the properties. After a hearing, the trial court ranked Edwards's interest superior to that of NORA's, and ordered that funds in escrow be disbursed to Edwards. For the reasons that follow, we affirm.

*Facts*

In coordination with Road Home Corporation d/b/a Louisiana Land Trust ("Road Home"), NORA worked with a developer, Pontchartrain Park Community Development Corporation ("PPCDC"), to create a revitalization plan that included the construction of single-family homes (the "Project") on a number of property sites ("Scattered Sites"). NORA acquired the Scattered Sites through Road Home. After acquisition, NORA transferred the Scattered Sites to PPCDC to complete the Project. NORA and PPCDC executed an agreement outlining the responsibility of the parties relative to the Project (the "Development Agreement"). Further,

1

pursuant to a Program Related Investment Loan Agreement (the "Loan Agreement"), NORA provided funds to PPCDC for the Project. PPCDC also secured considerable financing from First NBC Bank ("FNBC").

In addition to providing for the transfer of ownership of the Scattered Sites, the Development Agreement further stated NORA "shall recoup its Value Basis in a particular Scattered Site from sale proceeds resulting from the sale and conveyance of such Scattered Site to a home buyer." Additionally, pursuant to the Loan Agreement dated December 19, 2009, NORA lent PPCDC a total of $750,000.00. The executed Loan Agreement provides for NORA to get a payment each time one of the properties is sold. The Development Agreement was amended in February of 2010, and again in April of 2010. None of these agreements were filed into the Orleans Parish mortgage records.

Knowing that the Project would require considerable financing from a third party, NORA and PPCDC agreed that PPCDC would negotiate and enter into all necessary agreements with lenders. The Development Agreement would terminate if PPCDC failed to procure financing. It also provided for Scattered Sites that remained undeveloped after the Development Agreement expired or terminated to convey back to NORA. Given the importance of financing, the parties included the following language in the Development Agreement:

> … [N]o express language concerning Developer's [PPCDC's] obligation [to reconvey the Scattered Sites] pursuant to this Section 10.08 shall be included in any conveyance instrument. The purposeful omission of such language from the conveyance instruments is not intended to diminish in any way Developer's obligation to reconvey any undeveloped Scattered Sites to the Authority following expiration of the Term, but rather, such omission is in furtherance of Developer's ability to finance the Project and successfully achieve the stated goals and purposes thereof.

2

NORA and PPCDC first amended the Development Agreement on February 18, 2010, to identify the Scattered Sites to be conveyed. On April 6, 2010, the Development Agreement was amended for a second time providing for the direct conveyance of the Scattered Sites from Road Home to PPCDC. The Scattered Sites were transferred with full warranty of title and without any vendor's lien or privilege encumbering the properties. Also on April 6, 2010, NORA and PPCDC executed a Memorandum of Development Agreement ("MODA").[1] The MODA mentioned the execution of the original Development Agreement and the two subsequent amendments, while also declaring NORA's subordination to lenders. The MODA was the only document executed between NORA, PPCDC, and Road Home that was filed into the Orleans Parish mortgage records.

In addition to the unrecorded Loan Agreement PPCDC executed with NORA, on January 7, 2011, PPCDC's subsidiary, Pontchartrain Park Community Development Corporation Real Estate Holdings, LLC ("REH"), executed a promissory note in favor of FNBC in the original principal amount of $3,187,282.00. Then, on August 3, 2012, REH executed an additional promissory note in favor of FNBC in the principal amount of $250,000.00. Both promissory notes were secured with Multiple Indebtedness Mortgages.

Edwards is a successor in interest to FNBC, the institutional lender to REH, a wholly owned subsidiary of PPCDC. Edwards filed an ordinary process foreclosure suit against REH for defaulting on two mortgages encumbering sixty-

_____

[1] Road Home intervened in the MODA.

3

three properties as security for the more than $3,500,000.00 debt ("Case No. 2018-12443").[2] NORA filed a separate suit against Edwards seeking escrowed funds from the sale of several redeveloped properties ("Case No. 2020-8781").  The lawsuits were consolidated.

On May 28, 2021, the trial court heard arguments on a Rule to Rank Mortgages in Case No. 2018-12443 and a Motion for Summary Judgment dismissing NORA's claims for the escrowed funds in Case No. 2020-8781 both filed by Edwards.  The trial court found in favor of Edwards concluding that NORA had subordinated its interest in the subject properties to Edwards' interest in two Multiple Indebtedness Mortgages that required Edwards to be paid in preference to NORA.  Further, the trial court dismissed NORA's claims in Case No. 2020-8781 with prejudice and ordered that the escrowed proceeds be disbursed to Edwards.  This appeal followed.

### *Assignments of Error*

On appeal, NORA contends that the trial court erred when it ranked Edwards's interest in the two recorded mortgages ahead of NORA's interest, and further erred by disbursing the escrowed funds to Edwards. Specifically, NORA maintains that the filing of the MODA in the Orleans Parish mortgage records was sufficient to place FNBC on notice of the Development Agreement and amendments between NORA and PPCDC.  Thus, the interest in the later filed mortgages would be subordinate to NORA's interest in the properties, ranking

---

[2] NORA was also a named defendant in Case No. 2018-12443.

NORA in first position to receive the funds in escrow. In response to NORA, Edwards maintains it was entitled to first position ranking and the escrowed proceeds as a matter of law.

### *Standard of Review*

In accordance with La. C.C.P. art. 966(A)(3), a motion for summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. Code Civ. P. art. 966(A)(3). This Court reviews the granting of a summary judgment on appeal *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Planchard v. New Hotel Monteleone, LLC*, 2021-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625 (citing *Guidry v. Brookshire Grocery Co.,* 2019-1999 (La. 2/26/20), 289 So.3d 1026, 1027; *Murphy v. Savannah,* 2018-0991 (La. 5/8/19), 282 So.3d 1034, 1038; *Wright v. Louisiana Power & Light*, 2006-1181 (La. 3/9/07), 951 So.2d 1058, 1070). Generally, on a motion for summary judgment, the burden of proof remains with the mover. But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(D)(1). However, if the

5

opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted. *Id.*

## *Discussion*

Louisiana's public policy stating that interest in real estate must be recorded in order to effect third persons is known as the public records doctrine. *Cimarex Energy Co. v. Mauboules,* 2009-1170, p. 18 (La. 4/9/10), 40 So.3d 931, 943. The primary purpose of the public records doctrine is the protection of third persons from unrecorded interests. *Id.* According to the public records doctrine, an instrument in writing affecting immovable property which is not recorded is considered null and void except between the parties. *Id.* In this regard, the doctrine is considered a negative doctrine because it denies the effect of certain rights unless they are recorded. *Id*.; *See Camel v. Waller*, 526 So.2d 1086, 1089-90 (La. 1988). Thus, the public records doctrine allows third persons to rely upon the absence from the public records of those interests that are required to be recorded. *Cimarex, supra*.

The public records doctrine is codified in La. C.C. art. 3338, which provides in pertinent part:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.

***

6

(5) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

In this case, the Development Agreement, amendments, and Loan Agreement would be instruments requiring recordation to have effect on third persons. Yet, the MODA was the only instrument entered into the public records. The MODA referenced the Development Agreement and amendments but there is no mention of the Loan Agreement under which NORA seeks to collect funds. Further, and most pertinent to this appeal, the MODA contained the following language:

> The [Development] Agreement extends for an initial three (3) year period from November 7, 2008, and may be extended by five consecutive one (1) year extensions. The Agreement provides, *inter alia*, that property remaining undeveloped after the Term of the Agreement, as extended, shall be re-conveyed to the Authority [NORA] free and clear of any encumbrances, except "Permitted Encumbrances" within thirty (30) days of expiration of the Term of the Agreement. The Authority agrees to subordinate its right of reversion to the interest of Developer's lenders.

> ***

> This Memorandum of Development Agreement is intended to provide notice of the existence of the Authority's [NORA's] subordination of its rights. Except for that subordination, nothing in this Memorandum of Development Agreement is intended to modify the Agreement or the terms of any conveyance made pursuant to its provisions.

Louisiana Code of Civil Procedure provides the authority for courts to determine the ranking of a mortgage. Under La. C.C.P. art. 2592, a summary proceeding may be used to determine "the rank of mortgages, liens, and privileges on property sold judicially, and of the order of distribution of the proceeds thereof." La. C.C.P. art. 2592(7). Normally, mortgages, and other encumbrances on real estate are ranked in the order in which they are filed giving the first filed

7

priority over subsequent filings in the public record. *See* La. C.C. art. 3307. However, Louisiana law allows contractual provisions or acts of subordination that alter or modify the priority of rights. *Bankers Trust Co. of California v. Breaux*, 2004-1299, p.4 (La.App. 5 Cir. 3/29/05), 900 So.2d 980, 981-82 (citing *T.D. Bickham Corp. v. Hebert*, 432 So.2d 228 (La. 1983)). A valid subordination is not required to be in any particular form, but the intent of the parties must be apparent. *Id.*

Here, the clear language of the MODA sets forth the intent of the instrument as a declaration to express NORA's subordination to other lenders. That specific subordination language is consistent with every action NORA and PPCDC took to cause the Project to be more appealing to a financial institution. Considering all the agreements entered into by NORA and PPCDC, that were not filed into the public records, it is clear that the parties were aware that securing financing would be difficult, if not impossible, if the Scattered Sites were encumbered. We find that the MODA contains a valid subordination of NORA's rights.

## *Conclusion*

Accordingly, we find no error in the trial court's ranking of mortgages and determination that Edwards was entitled to the escrowed funds as a matter of law. For the reasons discussed, the trial court's judgment is affirmed.

**AFFIRMED**

8