444 So.2d 698 (1984)
TEXAS BANK OF BEAUMONT
v.
Kazem Michel BOZORG.
No. 82-CA-57.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1984.
Rehearing Denied February 17, 1984.
Writ Granted April 23, 1984.
*700 Thomas G. Donelon, Metairie, for plaintiff-appellant.
Richard T. Regan, Metairie, for defendant-appellee.
Before KLIEBERT, BOWES, CURRAULT, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
Plaintiff appeals from a judgment by the district court in favor of intervenor, Massey-Ferguson, Inc., recognizing intervenor's mortgage executed by the defendant and his wife on September 11, 1978, to be superior to all mortgages of plaintiff, Texas Bank of Beaumont (hereinafter referred to, sometimes, simply as "Texas"). We reverse the judgment of the trial court.
Plaintiff, Texas Bank of Beaumont, filed suit to recover amounts due under hand notes payable to the order of plaintiff dated March 21, 1981, and February 4, 1980. Plaintiff filed executory process against defendant, Kazem Michel Bozorg, to enforce their rights. Massey-Ferguson, Inc. intervened, asserting their mortgage claim against defendant was superior to that of plaintiff.
In order to properly determine the ranking of the competing claims, it is necessary to review the sequence of events, which are as follows:
1. On August 12, 1975, Kazem Michel Bozorg executed a hand (promissory) note secured by a collateral mortgage and collateral mortgage note in the sum of Two Hundred Thousand and No/100 ($200,000.00) dollars, note payable on demand to the order of Bearer (held by First Metropolitan Bank of Jefferson Parish).
2. On January 12, 1978, Maryam Safavi, wife of/and Kazem Bozorg executed a hand note (promissory note) secured by a collateral mortgage note and collateral mortgage in the sum of Thirty-five thousand and No/100 ($35,000) dollars, said note payable on demand to the order of Bearer (held by First National Bank of Jefferson Parish).
3. On September 11, 1978, Maryam Safavi, wife of/and Kazem Bozorg executed a hand note (promissory note) secured by a collateral mortgage note and collateral mortgage in the sum of Three hundred forty-four thousand four hundred six and 59/100 ($344,406.59) dollars, said note payable on demand to the order of Bearer (held by Massey-Ferguson, Inc., intervenor and appellee herein).
4. As of January 4, 1980, the indebtedness owed by Kazem Bozorg to First Metropolitan Bank (under the hand note of August 12, 1975Item 1 above) amounted to Eighty-eight thousand twenty-five and 34/100 ($88,025.34) dollars. On the same date, January 4, 1980, First Metropolitan Bank executed an Assignment of the hand note, the collateral mortgage note and collateral mortgage to Texas Bank of Beaumont. Both notes and the mortgage were delivered to Texas.
5. On February 4, 1980, Kazem Bozorg executed a new promissory note (a hand note) to Texas Bank of Beaumont in the amount of Two Hundred Thousand Dollars ($200,000.00), which note is secured by the pledge of the collateral mortgage and note executed August 12, 1975 (Item 1 above), which was assigned and delivered to Texas.
6. As of March 21, 1980, the indebtedness owed by Maryam Safavi, wife of/and Kazem Bozorg to the First National Bank of Jefferson Parish under the hand note of January 12, 1978 (Item 2 above) amounted to Thirty-three thousand nine hundred eleven and 01/100 ($33,911.01) dollars. On the same date, the First National Bank of Jefferson Parish executed an assignment of the hand note, the collateral mortgage note and collateral mortgage to Texas Bank of Beaumont. Both notes and the mortgage were delivered to Texas.
*701 7. On March 21, 1980, Kazem Bozorg executed a new promissory (hand) note to the Texas Bank of Beaumont in the sum of Thirty-five thousand and No/100 ($35,000.00) dollars, which note is secured by the pledge of the collateral mortgage and note of January 12, 1978 (Item 2 above), in the amount of Thirty-five thousand and No/100 ($35,000.00) dollars which was assigned and delivered to Texas.
Plaintiff, Texas Bank of Beaumont, contends that the new hand notes, upon which the present suit is based, obtain their ranking through the retrospective protection of LSA C.C. Article 3158[1]. Thus they contend that the new hand notes executed February 4, 1980, and March 21, 1980, would be ranked August 12, 1975, and January 12, 1978, respectively. The court now becomes concerned with applying the protective retroactive ranking provisions of Article 3158 to the new hand notes secured, respectively, by the pledge of the original collateral mortgage notes, which are not now in the hands of the original pledgee, but instead have been sold, assigned, transferred and delivered to a subsequent pledgee and holder by a legal and proper authentic act of assignment for adequate consideration.
Louisiana Civil Code Art. 3158 provides that when certain requisites are met, subsequent advances, secured by the pledge of the original collateral mortgage, rank retrospectively to the date of the initial issuance. The retrospective protection of article 3158 comes into play under these conditions:
1. The initial pledge is properly confected, with the parties mutually agreeing that the pledge will secure obligations arising thereafter;
2. Each succeeding loan must be specifically secured by a pledge of the original collateral;
3. The collateral must continuously remain in the hands of the pledgee, and
4. The parties must act in good faith at all times.
Appellee relies heavily on the case of Odom v. Cherokee Homes, Inc., 165 So.2d 855 (La.App. 4th Cir.1964), writ refused 167 So.2d 677 (1964), as did the trial court. In Odom, four collateral mortgage notes issued by the debtor, Cherokee Homes, Inc., were transferred from the original creditor (Morgan) to Odom. The court explained at page 864:
It cannot be contended that the four collateral mortgage notes which were handed to Odom by Talbot [Morgan's attorney] became Odom's property by purchase because on the same day they were pledged by the corporation as security for the $120,000.00 note [hand note] it gave Odom, and Odom sued as pledgee of these collateral notes. The corporation could not have re-pledged the [collateral mortgage] notes without at least constructively having them in its possession. [...]
We entertain no doubt that what took place in Talbot's office was not a sale of *702 Morgan's collateral to Odom, but was a payment of the corporation's indebtedness to Morgan with funds loaned to the corporation by Odom. [Emphasis ours]
In Odom, no hand note was either assigned or transferred. Subsequent to the transfer, Cherokee Homes, Inc., executed a hand note in favor of Odom and secured by the previously transferred collateral mortgage notes. The Fourth Circuit held that without the transfer of the primary indebtedness, the hand note, by the original creditor, said creditor had no right to transfer the pledged collateral mortgage notes, and that no pledge can exist minus the primary obligation it secures [emphasis ours]. Hence, when Odom paid the corporation's indebtedness (the hand noteits primary obligation), the pledge ceased to exist and the pledged collateral mortgage notes constructively returned to the hands of the corporation. The subsequent pledge of these notes to Odom, as security for the new $120,000 note held by Odom, was a reissuance of the collateral mortgage notes [emphasis ours] by the corporation.
In the present case, plaintiff has attained its position with regard to the notes through sales, assignments and transfers. These notes, then, are not in the hands of the original pledgee, and, at first blush, it appears the requisites of Article 3158 have not been satisfied. However, the same Fourth Circuit Court of Appeal has affirmed the transfer, assignment and sale of a hand note which was secured by pledge of a collateral mortgage note and collateral mortgage and ranked the hand note as effective from the date of existence of the original debt. Richey v. Venture Oil and Gas Corp., 346 So.2d 875, 876 (La.App. 4th Cir.1977).
The relevant facts in the Richey case are as follows: Venture Oil and Gas Corporation executed a promissory note (hand note) dated September 10, 1974, payable to Merchants National Bank of Mobile and secured by a pledge of a collateral mortgage note and a collateral mortgage. On the following day, September 11, 1974, Venture purchased by credit sale, a State Mineral Lease from H & W Oil, secured by a vendor's lien and mortgage. Subsequently, on January 26, 1975, Merchants National Bank transferred, sold and assigned to Lanier Richey the hand note of September 10, 1974, secured by the pledge of the original collateral mortgage note and collateral mortgage, and all were delivered to Richey.
As holder and owner of the hand note dated September 10th, Richey, after default in payment, foreclosed on the mortgaged property under executory process. H & W Oil intervened to have its vendor's lien and mortgage prime Richey's collateral mortgage. The Court rejected all of the intervenor's contentions and held the sale, assignment and transfer of the hand note, and the collateral note and mortgage, to Richey, valid and the ranking superior to the intervenor's mortgage and vendor's lien.
The court gave great weight to the fact that a transfer of the primary debt (the hand note) took place and that both the hand note and the collateral mortgage and note were assigned to Richey. It is true that the court took note of the language of the credit sale which contained a subordination clause acknowledging the collateral mortgage to be superior and to the language of the collateral mortgage, which provided that the mortgagee could transfer, negotiate, pledge or otherwise dispose of the promissory note. However, this does not change the fact that the court, in Richey, applied the protective retroactive ranking of Art. 3158 to a note not in the hands of the original pledgee, but which had been validly assigned and transferred and was now in the hands of a subsequent pledgee and holder. Thus, this holding recognized that when article 3158 states "remains and has remained in the hands of the pledgee" and "without withdrawal from the hands of the pledgee", it does not necessarily mean the original pledgee but may be another "pledgee" to whom the note has been validly assigned.
We concur in the holding of the Fourth Circuit in Richey.
*703 Even though the instant case is somewhat different from Richey in that the Richey suit was based upon the original hand note, whereas our case is based on new hand notes (but the same original collateral mortgage notes), it is important to note that in the present case, as in Richey, a notarial act of assignment was executed by the transferring bank to Texas; and, further, that, unlike Odom where the hand note was not assigned or transferred, here both the original hand notes and the collateral mortgages and notes were assigned, transferred and delivered to Texas. It was only because Bozorg wished to increase his indebtedness that the new hand notes were issued.
Additionally, the language in the mortgages executed by the Bozorgs does not refer to any specific holder in whose favor they were drawn, but to "any future holder or holders", making it unquestionably clear that the maker of the mortgages and notes did not intend that the instruments be restricted to the hands of any one holder or pledgee. This interpretation of this language in the mortgages is strengthened by the fact that both collateral mortgage notes (the "Ne Varietur" notes) were made payable to "Bearer", rather than to a specific payee.
La.C.C. art. 3158 refers to the pledged instrument or item remaining in the "hands of the pledgee." The article states that if the pledged property is not withdrawn from the hands of the pledgee, the pledge shall date back to the time the pledged item or instrument was originally pledged. Like the court in Richey, we are of the opinion that the phrase "remaining in the hands of the pledgee" and "without withdrawal from the hands of the pledgee" should be interpreted to mean not only the hands of the original pledgee, but also the hands of any subsequent pledgee to whom the collateral mortgage, mortgage note, and hand note are properly assigned and transferred without the pledged property being returned to the possession of the mortgagor (Pledgor). We feel that prevention of the pledged property from returning to the possession of the mortgagor was the real evil that article 3158 intended to guard against, as apparently happened in Odom. For what difference does it make if the pledged property is validly assigned from one pledgee to anotherespecially if it is at the request of the mortgagor and for his convenience, as was the case here.
Such an interpretation is consistent with the laws governing the transfer and assignment of negotiable instruments and, in our opinion, to hold otherwise would result in a restraint of trade in commercial transactions which encompass a huge market in the financial world and would curtail the use of ordinarily-accepted commercial practices which have evolved through custom, usage and agreement of the parties.
We find still further authorities for the final position we take here. In New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (La.App. 4th Cir.1972), writ refused 263 So.2d 47, the plaintiff sued the defendant upon default on a note and the Hibernia National Bank intervened, claiming that it was the holder of a collateral mortgage and collateral mortgage note, which secured the defendant's debt to Hibernia, and that their collateral mortgage primed the mortgage held by the plaintiff. Relying on Odom, supra, the plaintiff argued that because the original indebtedness to Hibernia had been paid in full, and because the hand notes still held by the bank were executed after the recordation of plaintiff's mortgage, plaintiff's mortgage primed that held by Hibernia and pledged by the defendant to secure his debt. Relying on LSA-C.C. article 3158, the Court found that the new hand notes held by Hibernia ranked from the date of the first indebtedness which was secured by the collateral mortgage and notes, even though the original primary debt (original hand note) had been paid in full. Therefore Hibernia's mortgage primed plaintiff's.
More recently, in First Guaranty Bank v. C.D. Alford, et al., 366 So.2d 1299 (La. 1978), Rehearing Denied 1979, the Supreme Court stated:

*704 A collateral mortgage note may be pledged to secure future obligations. In that event full payment of a given obligation will not extinguish the collateral mortgage note and accompanying mortgage (and in such cases the collateral mortgage will have a ranking from the initial pledge. La. Civil Code, art. 3158) [emphasis ours].
The preceding cases and others[2] make it abundantly clear that the law and jurisprudence today is that a collateral mortgage and accompanying collateral mortgage note(s) ranks from the date of its first pledge for or up to its full original amount regardless of the number of times that the hand note(s) is paid in full and a new one made. Likewise, it is obvious that such transactions are not novations since the underlying debt, the collateral mortgage note(s), is not extinguished. The new (hand) note(s) merely constitutes an extension of the maturity date of the original obligation.
More recently, in a case strikingly similar to the case before us, our fellow judges of the Second Circuit appeared to follow the same line of reasoning as we do here, when, in Mardis v. Hollanger, 426 So.2d 392 (La.App. 2nd Cir.1983) Writ Denied, they held that transfer of a collateral mortgage, collateral mortgage note and hand note from Farmers and Merchants Bank to the Bank of Morehouse and the subsequent executing of a new note by the pledgor did not effect the ranking of the mortgage acquired by the second lending institution.
Thus, applying the above-cited jurisprudence and codal article to the present case, we are of the opinion the trial court was clearly incorrect in relying on Odom and in its conclusion that the mortgage held by the intervenor, Massey-Ferguson, Inc., primes the collateral mortgages held by plaintiff, Texas Bank of Beaumont. Part of the reason for this is the trial court's incorrect appreciation of the facts. The trial judge's reasons for judgment state that only the collateral mortgage notes were transferred and assigned to Texas and that the hand notes were "paid off" by Texas; this was not the case. The transcript clearly reflects that the intent of all the banks involved in the Bozorgs' transactions was to place Texas Bank into the same position and with the same right as First Metropolitan Bank and First National Bank, respectively.
The officer from the First National Bank of Jefferson Parish testified that Texas Bank requested they not stamp the note paid but rather assign their interest, rights and claims to the payment of the note as Texas Bank wanted to buy out First National's position in the debt of Mr. Bozorg. He further testified he delivered the promissory note (hand note), the collateral mortgage note and collateral mortgage to Texas Bank. The Bank officer with First Metropolitan Bank was unable to recall all of the specifics of his transaction with Texas Bank, but, in our opinion, his testimony definitely preponderates to the effect that he delivered the bank's whole collateral file, which included the hand note, to Texas.
We have concluded that the hand notes were not paid off but they, as well as the collateral mortgage and collateral mortgage notes, were validly assigned, transferred and delivered to Texas. In this connection, it is important to remember that the hand notes, being bearer instruments, can be validly assigned and transferred simply by delivery. Accordingly, the argument advanced by counsel for intervenor to the effect that the hand notes were not validly assigned because they were not mentioned in the acts of assignment is without merit.
Consequently, it is clear that Texas Bank paid First Metropolitan Bank and First National Bank of Jefferson Parish not as a *705 "pay-out" on behalf of the Bozorgs but rather to buy the interest owned by the respective banks in Bozorg's debts. Subsequent to Texas Bank acquiring the hand notes and the accompanying collateral, then they were owed the debt by the Bozorgs, just as the first two banks had been.
Accordingly, the judgment of the trial court is reversed and we find that the mortgages of plaintiff, Texas Bank of Beaumont, in the amount of Two Hundred Thousand ($200,000) Dollars and the sum of Thirty-Five Thousand ($35,000) Dollars rank respectively from August 12, 1975 and January 12, 1978, and, therefore, are superior to and prime the mortgage of intervenor, Massey-Ferguson, Inc.
REVERSED.
KLIEBERT, J., dissents with reasons.
GAUDIN, J., dissents with reasons.
KLIEBERT, Judge, dissenting.
I respectfully dissent from the majority opinion.
The majority concludes that First Metropolitan Bank and First National Bank of Jefferson executed an assignment of the hand note, the collateral mortgage note and the collateral mortgage to Texas Bank of Beaumont. The assigning language contained in the notarial assignment (P-8) from First Metropolitan to Texas Bank reads as follows:
"[First Metropolitan] ... assigns to the Texas Bank of Beaumont all of its rights, title, interest, priority and privilege in connection with a certain collateral mortgage note, dated August 12, 1975, in the principal amount of $200,000.00 Dollars, payable on demand to the order of bearer and signed by Kazem Bozorg; and a collateral mortgage by act before Robert J. Skinner, Notary Public, on August 12, 1975 mortgaging in favor of any person, firm, or corporation the following described real estate ..."
The assigning instrument from First National Bank of Jefferson (P-8) to Texas Bank contains similar language. In both instances, the stated consideration for the assignment was the exact amount then owed on the hand notes by Bozorg to the assigning bank.
Over objection of counsel for the intervenor, Massey-Ferguson, the trial judge admitted into evidence the testimony of Mr. M.C. Meller, formerly of the First National Bank of Jefferson. In essence, he testified that the agreement between the banks was for Texas Bank to buy out First National Bank of Jefferson's position on the loan. Accordingly, without cancelling the notes or marking them paid, he delivered the entire loan package, i.e., the promissory note (the hand note), the collateral mortgage note (the ne varietur note), and the collateral mortgage to the Texas Bank at the time of the assignment.
Also, over objection of counsel for the intervenor, Mr. Vollenweider of Metropolitan Bank appeared and testified that Texas Bank was to buy Metropolitan Bank's "collateral position" and as to the hand note said:
"Q. What did you deliver to Texas Bank of Beaumont when you executed that assignment?
A. I delivered a collateral mortgage and, as far as I recollect, I cannot find my collateral file at the bank since I talked to you on the phone last week and, I presume I must have given him my whole collateral file because usually we keep them in our vault after they are paid out. I couldn't find any recollection .... But I know I delivered the collateral mortgage note to them.
Q. Were there any other notes delivered?
A. I don't recall.
Q. Do you know what happened to the, what is called the `hand note'?
A. No. As I was listening to Miller give his testimony I was trying to recall what happened to our hand note. I don't recall if we .... if I brought that the same day or that was mailed. I don't recall.

*706 Q. Do you know whether or not it was returned to Kazem Bozorg?
A. Honestly, I don't know."
Although there may have been an intent to assign the indebtedness represented by the hand notes, since there is no testimony from a representative of Texas Bank as to the intended transaction and the original hand notes are not in evidence, the evidence submitted leaves a serious question as to whether the intended transaction was in fact consummated. Further, ".... what they say their intentions were is of no consequence if their actions had a legal effect different from such intentions." Odom v. Cherokee Homes, Inc., 165 So.2d 855 (4th Cir.1964), writ refused 167 So.2d 677 (La.1964), at page 864. The trial judge concluded the transaction was a payment of the indebtedness owed to the Louisiana banks by Bozorg with a portion of the funds loaned to him by Texas Bank under a pledge of the collateral mortgage note for new hand notes. Although he concluded the hand notes were delivered to Texas Bank, he refused to rank the indebtedness here sued on from the initial pledge of the collateral mortgage notes to First National Bank of Jefferson and to Metropolitan Bank. The majority opinion concluded the trial judge erred. I disagree.
As recognized by the majority, a collateral mortgage note is ranked from the date of its negotiation or issuance by the maker, not from the date of its confection. Its pledge as security for a hand note is a negotiation of the note.
Under the provisions of La.C.C. Article 3158, the indebtedness secured by pledge of a collateral mortgage note is ranked from the date of the initial pledge even though incurred subsequent to the initial pledge, provided:
(a) The initial pledge is properly confected, with the parties mutually agreeing that the pledge will secure the obligations arising thereafter;
(b) Each succeeding loan must be specifically secured by a pledge of the original collateral;
(c) The collateral must continuously remain in the hands of the pledgee; and
(d) The parties must act in good faith at all times.
True, in Richey v. Venture Oil & Gas Company, 346 So.2d 875 (4th Cir.1977) the Fourth Circuit applied the earlier ranking (the date of the initial pledge) to a hand note which was not then in the hands of the original pledgee. The trial judge distinguished the Richey case by pointing out that the indebtedness sued on in the Richey case were represented by the same hand notes which had been assigned by the original pledgee; whereas, here the indebtedness is represented by hand notes made and pledged to Texas Bank, the new pledgee, subsequent to the assignment. In my view, the trial judge's distinction was a valid one.
Likewise, the case of Mardis v. Hollanger, 426 So.2d 392 (2nd Cir.1983) presents a different factual situation from the Richey case and the one presented here. In Mardis, supra, prior to assigning the indebtedness to the new pledgee, the original pledgee had the debtor execute a hand note, for the amount of the indebtedness owed to it and the hand note, representing the indebtedness owed to it, was transferred to the new pledgee.
The majority seeks to justify its extension of the provisions of La.C.C. Article 3158 on the grounds the collateral mortgage, by its terms, runs in favor of all holders of the collateral mortgage note and not merely the original holder. The fallacy lies in the fact we are not here concerned with the validity of the collateral mortgage, but rather, the rank of the indebtedness for which it stands as security when measured against other earlier indebtedness secured by valid liens imposed against the mortgaged property subsequent to the confection of the collateral mortgage.
In further support of its position, the majority cites New Orleans Silversmiths, Inc. v. Toups, 261 So.2d 252 (4th Cir.1972) and First Guaranty Bank v. Alford, 366 So.2d 1299 (1978). The factual situations *707 involved in those cases are totally different from the one involved here. There, the collateral mortgage notes had been repledged, but to the original pledgee; whereas, here, the collateral mortgage notes were repledged to a new pledgee and it is the new, not the old, indebtedness which is being sued on. Here, the indebtedness sued on (the new hand notes) was incurred subsequent to the assignment and the security for the hand notes confected by the repledge of the collateral mortgage notes to a new pledgee. Hence, the prerequisites of La.C.C. Article 3158 have not been complied with.
According to the majority, its interpretation of La.C.C. Article 3158 is consistent with the laws governing the transfer and assignment of negotiable instruments and to hold otherwise would result in a restraint of trade in commercial transactions. To me, the interpretation is contrary to the laws governing the transfer and assignment of negotiable instruments because it fails to adhere to the fundamental principle that a mortgage is an accessory right which is granted to the creditor over the property of another as security for a debt. La.C.C. Article 2378, 3284. As an accessory right, it falls when the debt falls. The exception to this is La.C.C. Article 3158 which provides that a collateral mortgage note can be pledged for future obligations, provided the prerequisites [itemized as (a), (b), (c) and (d) above] of the article are met. To me, to rank the indebtedness sued on here as of the time of the initial pledge of the collateral mortgage note is an unwarranted extension of the provisions of the article. If such an extension is to be made, then it should be made by the legislature, not the courts. For those reasons, I respectfully dissent.
GAUDIN, Judge, dissenting.
I respectfully dissent, being of the opinion, as was the trial judge, that the claims of the Texas Bank of Beaumont should be ranked from the dates of the new notes, which were subsequent to the maturing of the Mossey-Ferguson, Inc. claim.
NOTES
[1] Art. 3158

... It is further provided that whenever a pledge of any instrument or item of the kind listed in this article is made to secure a particular loan or debt, or to secure advances to be made up to a certain amount, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, and the pledged instrument or item remains and has remained in the hands of the pledgee, the instrument or item may remain in pledge to the pledgee or, without withdrawal from the hands of the pledgee, be repledged to the pledgee to secure at any time any renewal or renewals of the original loan or any part thereof or any new or additional loans, even though the original loan has been reduced or paid, up to the total limit which it was agreed should be secured by the pledge, and, if so desired or provided, to secure any other obligations or liabilities of the pledger to the pledgee, then existing or thereafter arising, up to the limit of the pledge, without any added notification or other formality, and the pledge shall be valid as well against third persons as against the pledger thereof, if made in good faith; and such renewals, additional loans and advances or other obligations or liabilities shall be secured by the collateral to the same extent as if they came into existence when the instrument or item was originally pledged and the pledge was made to secure them....
[2] Acadiana Bank v. Foreman, 352 So.2d 674 (La.1977); American Bank v. Red Diamond Supply Co., Inc., 402 So.2d 729, 731 (La.App. 4th Cir.1981); Tallulah Production Credit Association v. Turner, 391 So.2d 885 (La.App. 2nd Cir. 1980) writ refused 396 So.2d 900; Richey v. Venture Oil and Gas Corporation, supra; McLendon v. Brewster, 286 So.2d 513 (La.App. 2nd Cir.1973) writ refused, 288 So.2d 354.